THE CITIZENS NATIONAL BANK and THE EMPORIA NATIONAL BANK, *Appellees,* v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF LYON *et al., Appellants.*

No. 16,685.

SYLLABUS BY THE COURT.

1. TAXATION—*Discrimination—Injunction—Petition.* In an action by a bank to restrain the collection of a portion of the taxes levied against its property a petition alleging that by resolutions adopted by the township and city assessors in the year 1907 real estate in Lyon county was assessed at twenty-five per cent of its cash value, and personal property, including the capital shares and surplus of the plaintiffs, at forty per cent of their cash value, and that before commencing suit the plaintiffs tendered to the county treasurer the full amount of the state taxes and the amount they claimed was due the county, based upon the proper valuation, and averred a willingness to pay whatever sum the court should determine to be its valid share of taxes, states a cause of action for equitable relief.

2. ——— *Differences in Valuations Intentionally Made by Assessors.* In such an action, where it appears from the evidence that the resulting differences in the valuations have not arisen from mere differences of opinion of the taxing officers as to the actual value of the different classes of property, but were the result of an arbitrary, capricious and unlawful agreement by the assessors to list for taxation different classes of property at different rates of valuation, equity will afford relief by enjoining the collection of so much of the taxes as are in excess of the plaintiffs' fair and equal share of the whole amount of taxes to be raised.

Appeal from Lyon district court. Opinion filed November 5, 1910. Modified.

W. C. Harris, M. M. Suddock, and O. S. Samuel, for the appellants.

C. M. Kellogg, L. B. Kellogg, and R. M. Hamer, for the appellees.

The opinion of the court was delivered by

PORTER, J.: This action was brought to restrain the collection of a portion of the taxes levied against the personal property of the plaintiffs for the year 1907. The court rendered judgment permanently enjoining the collection of so much of the taxes as were adjudged to be invalid. The defendants appeal.

The petition alleged that real estate in Lyon county for the year 1907 was assessed at twenty-five per cent of its cash value—that being the valuation placed thereon in the year 1906, which, under the law, remained the same for two years—while personal property, by an agreement entered into by the township and city assessors, was assessed at forty per cent of its cash value. The evidence fully established these averments, and, in addition, showed that the assessors at their annual meeting in March, 1907, agreed to, and afterward did, assess all cattle, horses, live stock, farming implements and household furniture at certain fixed and arbitrary values, without reference to their actual cash value, so that these classes of personal property were assessed at less than thirty per cent of their actual value. There were, therefore, in the year 1907, three different rates employed in the valuation of property in Lyon county for the purposes of taxation. Real estate was assessed at twenty-five per cent, personal property other than real estate and for the most part owned by farmers at about thirty per cent, and all other personal property, including the capital and surplus of the plaintiff banks, at forty per cent of the cash value. These different rates of valuation were fixed and agreed upon by resolutions adopted by the township and city assessors.

It is apparent that the resulting differences in the valuations of the different kinds of property can not be said to have arisen from mere differences of opinion of the taxing officers as to the actual value of the different classes of property, but, on the contrary, they were the result of an arbitrary and unlawful agreement by the assessors to list for taxation different classes of property at different rates of valuation.   There is, therefore, no force in the contention of the defendants that courts of equity will afford no relief against the kind of discrimination alleged, or that the petition failed to state a cause of action because it failed to show fraud or corruption on the part of the officers, within the. doctrine of *Symns v. Graves,* 65 Kan. 628, and *Finney County v. Bullard,* 77 Kan. 349.   The cases relied on differ very materially in their facts from the case under consideration.

This court has always adhered to the rule that it will not enjoin the collection of taxes upon the sole ground that the taxes are excessive or unequal, where the inequality arises from mere errors of judgment.   Equity will grant no relief for errors and inequalities in assessments arising out of the accidental omission of property from the tax rolls or the accidental differences in valuations resulting from errors of judgment, however unjust or excessive the result may appear, if no fraud is shown on the part of the taxing officers or the statutory board of review.   This is the doctrine of *Symns v. Graves,* 65 Kan. 628, and *Finney County v. Bullard,* 77 Kan. 349.   In the latter case the first paragraph of the syllabus reads:

"Injunction will not be awarded to prevent the collection of a tax on the ground of an irregular or excessive assessment unless the case comes clearly under some acknowledged head of equity jurisdiction."

In *Symns v. Graves,* supra, it was said:

"The district court could not substitute its judgment for that of the board of equalization, and this court can not impose its notion of value on either."   (p. 636.)

(See, also, *Bank of Garnett v. Ferris,* 55 Kan. 120, and *Electric Co. v. Jackson County,* 81 Kan. 6.)

On the other hand, it was held in *Symns v. Graves,* supra, that courts have power to relieve against injustice resulting from fraud, corruption and conduct so oppressive, arbitrary or capricious as to amount to fraud. Again, it was said in *Salt Co. v. Ellsworth County,* 82 Kan. 203:

"If they assessed another salt plant at $45,000, knowing that it was of greater value than that of appellant, which was placed at $260,000, it was an intentional discrimination and a fraud upon appellant, and if the assessment against appellant is excessive it affords good grounds for the interposition of a court of equity." (p. 205.)

The situation here presents stronger grounds for the interference of a court of equity than the case just cited. The action of the officers in assessing one class of personal property at forty per cent, another at thirty per cent and real estate at twenty-five per cent of its cash value was the result of deliberation and intention, and was so arbitrary and capricious as to constitute fraud on the rights of the plaintiffs. The constitution declares that "the legislature shall provide for a uniform and equal rate of assessment and taxation" (art. 11, § 1), and section 2 of the same article reads:

"The legislature shall provide for taxing the notes and bills discounted or purchased, moneys loaned, and other property, effects, or dues of every description (without deduction), of all banks now existing, or hereafter to be created, and of all bankers; so that all property employed in banking shall always bear a burden of taxation equal to that imposed upon the property of individuals."

The legislature of 1876, in furtherance of these constitutional requirements, while providing how bank stock shall be assessed and taxed, expressly declared as follows: "That banking stock or capital shall not be

assessed at any higher rate than other property."
(Laws 1876, ch. 34, art. 6, § 22; see, also, Laws 1891,.
ch. 84, § 1, Gen. Stat. 1909, § 9298.)

We have no hesitation in arriving at the conclusion
that the petition stated a cause of action. The case
falls clearly within the doctrine of *C. B. & Q. Rld. Co.
v. Comm'rs of Atchison Co.,* 54 Kan. .781. There the
state board of railroad assessors valued all railroad
property in Atchison county at its true value, and the
city and township assessors, by an agreement among
themselves, assessed all other property at twenty-five.
per cent of its true value. It was held that the col-
lection of the illegal excess could be enjoined. In the
opinion it was said:

"This unequal valuation was not the result of an ac-
cidental omission of property from the assessment list,.
or an accidental valuation of property at more or less
than its true value." (p. 787.)

In the opinion the case is distinguished from the
older one of *Adams v. Beman,* 10 Kan. 37, where per-
sonal property of the plaintiff was assessed at full value
while other personal property was assessed at one-
third, and an injunction was denied for the reason that
the party seeking to enjoin the taxes made no offer to
pay any portion thereof, but was seeking to obtain a
judgment holding all taxes in the county invalid. The
distinction between *Adams v. Beman* and the present.
case is equally apparent.

It is urged by the plaintiffs that the action of the tax-
ing officers of Lyon county is in direct conflict with the
provisions of section 5219 of the Revised Statutes of
the United States, which authorizes the legislature of
each state to determine the manner of taxing shares
of national banking associations located within the
state, and which expressly provides that such taxation.
shall not be at a greater rate than is assessed upon.
other moneyed capital in the hands of individual cit-
izens of such state. It is true, as contended, that the

state of Kansas and its taxing officers would be wholly without power to levy any taxes, either direct or indirect, upon the national banks within the state, were it not for this permissive legislation of congress. (*Citizens' Savings Bank v. Owensboro,* 173 U. S. 636.) But we have not seen fit to rest our decision on the ground of any conflict between the action of the taxing officers of Lyon county and section 5219 of the Revised Statutes of the United States, for the reason that the action of the defendants is a clear violation of the taxing laws of the state, and is such, in our opinion, as to entitle the plaintiffs to the relief sought without reference to the provisions of the national banking act.

The defendants insist that the action can not be maintained because the plaintiffs admit that their property was not assessed at its full value, as provided by law. Prior to the adoption of the tax-commission law the provision requiring that all property shall be taxed at its actual cash value was universally ignored in this state. If all property in Lyon county had been assessed at forty per cent of its full value, the plaintiffs would have had no cause to complain. The fraud upon their rights results from the arbitrary distinction made between their property and other property. In the opinion in *Finney County v. Bullard,* 77 Kan. 349, citing *Challiss v. Rigg,* 49 Kan. 119, it was said that "the mere fact, too, that the taxing officers made a fractional instead of the full value of the property the basis of assessment does not authorize the granting of an injunction to restrain the collection of taxes" (p. 355), the reason being that no injustice could result where all property was valued upon the same basis. And where, as in this case, a clear showing is made otherwise entitling the plaintiff to equitable relief the remedy will not be denied merely because the taxing officers have used a fractional instead of the full value basis of assessment.

There is no merit in the contention that the action

can not be maintained because it appears from the record that the plaintiffs own real estate in Lyon county which is assessed at the same rate that other real estate is valued. The validity of the assessment of real estate is in no sense involved here. By illegally valuing the personal property of the plaintiffs at a higher rate than other personal property in the county an inequitable discrimination was made between the plaintiffs and those taxpayers who own no real estate and who pay only upon personal property.

There is a further contention that the action can not be maintained because of the character of the tender made by the plaintiffs before commencing suit. The first half of the taxes of 1907 was paid. When the second half fell due the plaintiffs tendered to the county treasurer a sum of money equal to the full amount of the state taxes and what they claimed was due the county for county taxes, based upon the proper valuation; and in their petition they aver a willingness to pay whatever sum the court shall determine to be their valid share of taxes. It is contended by the defendants that the action must fail because the amount of taxes due the state was not separated in the tender from the amount claimed to be due the county. The tender, coupled with the offer to do equity, was sufficient. As was said in *Bank of Garnett v. Ferris,* 55 Kan. 120:

"If the parties had paid that portion of the tax about which there was no question and such part of the remainder as could be readily ascertained to be a just tax upon a fair valuation, they would have been entitled to an injunction to prevent the collection of the illegal excess." (p. 123.)

This is exactly what the plaintiffs attempted to do, and the fact that the portion due the state was not separately tendered can not be held to defeat their right to equitable relief.

The judgment relieved the plaintiffs from the payment of all taxes except so much as would result from the assessment of its property at thirty per cent of its real

value. It is not shown how this percentage was arrived at. The plaintiffs should have been required to pay such proportion of the total amount to be raised as the actual value of their own property bore to the actual value of all the property subject to taxation. That is the plain requirement of fairness and equality. The amount can be easily ascertained when it is known what proportion of the property in Lyon county was assessed at twenty-five, thirty and forty per cent. The record, however, does not furnish these data, and the case is remanded in order that the final judgment may be modified to accord with the view herein expressed.