No. 45,205

CARL W. SEBITS, CECIL BURTON, BILL J. PORTER, and DALE M. ROBINSON d/b/a PICKRELL DRILLING COMPANY, a Partnership, *Appellants and Cross-Appellees,* v. LETHA E. JONES, Treasurer of Kingman County, Kansas; et al., *Appellees and Cross-Appellants,* and BELMONT TOWNSHIP of Kingman County, Kansas; et al., *Appellees.*

(449 P. 2d 551)

Opinion filed January 25, 1969.

*Donald L. Cordes,* of Wichita, argued the cause, and *George B. Powers,* of Wichita, and *Roy E. Williams,* of Kingman, were with him on the briefs for the appellants and cross-appellees.

*John C. Woelk,* of Russell, argued the cause, and *Lewis C. Carter, Robert McDowell* and *George D. Wagstaff,* of Topeka, and *Theodore C. Geisert,* of Kingman, were with him on the briefs for the appellees and cross-appellants.

*Paul R. Wunsch,* of Kingman, was on the briefs as attorney for Jt. Common School District No. 1 and Joint Rural High School District No. 8; *Theodore C. Geisert,* of Kingman, was on the briefs for all other township and school districts, and *Max D. Hall,* of Anthony, was on the briefs for Harper Hospital District No. 5, appellees.

*Tom L. Schwinn,* of Wichita, was on the *amicus curiae* brief for Kansas Independent Oil and Gas Association.

The opinion of the court was delivered by

HATCHER, C.: This is an appeal from a judgment in an action brought pursuant to K. S. A. 79-2005 to recover ad valorem taxes paid under protest for the year 1965 on oil and gas leases.

Plaintiffs are associated together as a partnership under the firm name of Pickrell Drilling Company and engage in the business of oil production in Kingman County, Kansas. The instant action involves 43 of its producing leases. During the month of February, 1965, the plaintiffs received from the Kingman County assessor rendition forms for reporting the value of their leases and the "1965 Oil and Gas Assessment Schedule."

One of the plaintiffs, Dale Robinson, a petroleum engineer, made an appraisal of the properties and arrived at an opinion of value of the properties for the year 1965 by using what he suggests as the ordinary and recognized engineering methods of valuing oil producing properties. He claimed to be confused by the 1965 assessment schedule and therefore an affidavit of Robinson's appraised value was attached to the rendition form and arrangements made for a meeting with the county assessor of Kingman County. The county assessor informed plaintiffs that he would correct the rendition to conform to the 1965 Oil and Gas Assessment Schedule, which he did. Plaintiffs then appealed to the County Board of Equalization where they were informed that the 1965 schedule would be followed strictly.

Plaintiffs next filed an appeal with the State Board of Equalization. A hearing was held and evidence submitted. The final order of the Board's adjustment reduced the assessed valuation of five leases, although no particular reason or pattern was disclosed in making the reductions. Under the order of the State Board of Equalization, the 100% justifiable value of the leases was set at $4,426,333.29 as contrasted with plaintiffs' claim of a value of $3,611,360.00. The assessed valuation was then fixed at 30% of the Board's value or $1,330,900.00. The plaintiffs paid the first half of the 1965 taxes and filed a protest with the treasurer of Kingman County. The protest alleged that the correct justifiable value of the leases should have been determined at $3,611,360.00 and the assessed valuation should have been calculated on a ratio of 20%.

In due time the plaintiffs instituted the present action. At the close of the hearing the trial court submitted complete and com-

prehensive findings of fact and conclusions of law and denied the plaintiffs' request for relief. Hence this appeal. There was also a cross-appeal which need not be considered because of the conclusions reached on original appeal.

Before we reach the case on the merits, there are two alleged trial errors which require attention.

The plaintiffs joined as defendants all of the school districts, townships and one hospital district making a levy upon the leases in controversy. On motion of such defendants, the trial court dismissed them from the action.

The plaintiffs appear to have joined these defendants and raised the question of their dismissal on appeal rather as a matter of precaution than a desire to have them parties in the case. They state:

". . . The said defendants were joined by plaintiffs because under the language of *Sinclair Pipe Line Co. v. State Commission of Revenue & Taxation,* 181 Kan. 310, 311 P. 2d 342, it was felt that these parties were proper, and quite frankly, plaintiffs were concerned that if the said defendants had not been made parties a contention might have been made that they were indispensable. . ."

In the *Sinclair Pipe Line Co.* case cited in the quotation above we did, more or less by way of analogy, state:

"It is interesting to note that, contrary to contentions advanced by appellants, some of the foregoing decisions, likewise provisions of the involved statute (79-2005), recognize that the State Commission of Revenue and Taxation, as well as the taxing units to be affected by its determination, are proper parties to an action instituted, under the terms of such statute, to recover taxes paid under protest. . . ." (p. 313.)

Although townships, school districts and hospital districts are subdivisions of the state government with power to make levies for their operation and as such are properly referred to as taxing units or taxing districts, they have no voice or authority whatsoever in determining values for assessment purposes. They may be proper parties, if they desire to participate, as they are interested in the assessed value to which their levies will be applied, but as they have nothing to do with the determining of the assessed value and have nothing to do with any refund that may be directed they are not necessary or indispensable parties in an action to recover taxes paid under protest because of an alleged improper assessment. The presence of such numerous parties would only tend to clutter the proceedings.

The plaintiffs next contend that the trial court erred in suppressing the depositions of Sam Brookover and Harold Grauerholz, mem-

bers of the State Board of Equalization, and in suppressing the answering of interrogatories by Alvin E. Jones, Director of Property Valuation for the state of Kansas.

The record does not disclose what plaintiffs sought to elicit by the depositions, but it would appear from the interrogatories addressed to the Director of Property Valuation that plaintiffs were attempting to obtain from the state officials just what considerations constrained them to their conclusions or decisions. Each of the interrogatories commenced with the phrase "State the precise factual basis upon which it was determined. . . ." or "State the precise factual details upon which it was concluded. . . ."

The integrity of the administrative process requires that an officer be protected from examination or interrogatories, when attempted by a party seeking relief from an administrative order, regarding the process by which the officer reached his conclusions.

We approve the rule stated in *Chicago, B. & Q. R. Co. v. Babcock*, 204 U. S. 585, 27 S. Ct. 326, 51 L. Ed. 636, which reads:

"When we turn to the evidence there is equal ground for criticism. The members of the board were called, including the governor of the state, and submitted to an elaborate cross-examination with regard to the operation of their minds in valuing and taxing the roads. This was wholly improper. In this respect the case does not differ from that of a jury or an umpire, if we assume that the members of the board were not entitled to the possibly higher immunities of a judge. . . ." (p. 593.)

Plaintiffs call our attention to K. S. A. 60-407 which provides that "every person is qualified to be a witness." We suggest that the statute does not provide for the admissibility of the testimony of every qualified witness. An administrative officer under some circumstances might be a qualified witness but he can not be questioned as to the precise factual basis of his findings or conclusions or the precise factual details which influenced his findings or conclusions.

We now reach the merits of the case and present plaintiffs' contentions which are stated as follows:

"The plaintiffs made two principal contentions on merits before the trial court. First, plaintiffs claimed that the 100% justifiable value upon which the assessments were based were determined in an arbitrary, capricious and constructively fraudulent manner and resulted in causing plaintiffs to pay more than their proportionate share of the tax burden in Kingman County. Second, and apart from the foregoing, whatever the correct 100% justifiable value may have been, the plaintiffs were discriminated against by the deliberate fixing of their assessed valuations at 30% of justifiable value whereas the bulk of other

property in Kingman County [real estate] was assessed at 20% of justifiable value. . . ."

The same contentions were made under similar facts, with the same petroleum engineers testifying for the respective parties, and the same 1965 Oil and Gas Assessment Schedule was challenged in the recent case of *Cities Service Oil Co. v. Murphy*, 202 Kan. 282, 447 P. 2d 791. In that case we concluded that the evidence failed to establish conduct by the defendants so arbitrary, oppressive and grossly discriminatory as to constitute constructive fraud and the plaintiff was not entitled to relief.

It would tend to confuse rather than enlighten were we to attempt to reiterate the principles of law laid down in the *Cities Service Oil Co.* case in the language of a different writer. We, therefore, adopt and incorporate herein by reference what was said in that case as the opinion of the court in this case on the issues quoted above, and having done so it necessarily results that the relief prayed for by plaintiffs must be denied.

The judgment is affirmed.

APPROVED BY THE COURT.

FATZER, J., dissenting: I regret that time does not serve to give adequate expression to my views as to why I cannot approve the district court's judgment denying the plaintiffs relief. I can only hastily give the reasons for my dissent, which are based upon the district court's findings of fact and conclusions of law.

Findings of fact Nos. 23 and 24 read:

"Personal property in Kingman County is assessed at 30% of value.

"K. S. A. 79-501 provides that all real and tangible personal property shall be assessed at thirty percent (30%) of its justifiable value. Since this act was passed in 1963 much progress has been made in re-evaluing real estate so that assessments throughout the state will be uniform and equal. A re-evaluation of real estate for Kingman County is planned but same has not yet taken place. The Real Estate Assessment Ratio Study for Kingman County for the year 1965 showed that the assessment ratio on rural real property was 20% and the median ratio for all real estate was 21%. The ratio for urban real estate was 23%."

Under the facts as found, the district court concluded the rate of assessment or values as fixed by the county assessor was not so excessive, arbitrary, oppressive or grossly discriminatory that it showed bad faith on the part of the taxing officials to constitute constructive fraud on the rights of the plaintiff-taxpayers.

The district court found the median ratio of assessment for all real estate in Kingman County was 21 percent or nine percent less than 30 percent of its true value. In *Addington v. Board of County Commissioners,* 191 Kan. 528, 382 P. 2d 315, the plaintiff's property was assessed in excess of 30 percent and other property in the district was assessed at twelve percent of its true value. It was held that the duty to assess at full value is not supreme but yields to the duty to avoid discrimination and that the rate of assessment of the plaintiff's property as compared to the rate of assessment of other property in the county was so arbitrary, oppressive and grossly discriminatory as to constitute constructive fraud on the rights of the plaintiff as a taxpayer and destroyed uniformity and equality of the rate of assessment entitling the plaintiff to the relief sought as to the illegal portions of the tax paid under protest.

The district court's finding that personal property was assessed at 30 percent of its true value and that the median ratio of assessment for all real estate in the district was 21 percent constitutes on its face a finding of discriminatory assessments between the plaintiffs' property and the assessed value of real estate. (*Bank v. Lyon County,* 83 Kan. 376, 111 Pac. 496.) The failure of the State Board of Tax Appeals and the Director of Property Valuations to place into effect in Kingman County, or any other county for that matter, assessments with respect to personal property and real estate simultaneously, constitutes nothing less than a systematic arbitrary, capricious and piecemeal application of the laws of this state with respect to the assessment of all property, and I cannot agree that this case should be affirmed. I would reverse the case and direct that judgment be entered in favor of the plaintiffs.